JBy the Court

Lumpkin, C. J.,
delivering the opinion.
This case having been twice before brought up to this Court it would be unnecessarily encumbering our records to recite the facts again. Suffice it to say, that this was an action of assumpsit, brought by Mark A. Cooper and Narcissa Boykin, executor and executrix of the last will and testament of Samuel Boykin, deceased, against Thomas Berry and others, as the owners of the steamboat Franklin, for the recovery of the value of one hundred and thirty-four bales of cotton, belonging to the estate of their testator, shipped on board said boat, consigned to Apalachicola, Florida, and alleged to have been consumed by fire on said boat by the negligence of defendants. The defendants pleaded the general issue, and also, that said cotton was received and shipped in said boat upon the agreement that defendants were not to be liable for the dangers of the river and fire.
1. The first error complained of by plaintiffs in error, the defendants in the Court below is, that the Court allowed William Belisle, the overseer of Mrs. Boykin, to testify that the captain of the boat handed him a “bill of lading” for one hundred and thirty-four bales of cotton, thus characterizing the nature or legal effect of the paper, which must speak for itself. The receipt given to Belisle by Charles Cruchton, the clerk of the boat, was as follows:
*164 “ Steamer Franklin.
“Received, at Mrs. Boykin’s landing, one hundred and thirty-four bales of cotton. Order from W. H. Harper, Columbus, says one hundred bales, but we concluded, as you had one hundred and thirty-four bales on the bank, that you wanted it all to go. The above is consigned to Messrs. Harper & Holmes, Apalachicola. Steamer Franklin,
“December 26th, 1853. per Charles Cruchton, clerk.”
No doubt it would have been more correct for the witness to prove the paper, and then to have read it to the jury, without any expression of opinion as to its tenor and effect. But as the receipt was read and submitted to the jury, the irregularity was cured.
2. The second point we shall consider is, did the Court err in charging the jury that the mere silence of Mrs. Boykin, when the overseer handed her the paper left by the boat, she making no objections at the time, was no evidence of ratification of the taking one hundred and thirty-four bales of cotton by the boat. We think the specific objection is not well taken. Belisle, the agent and overseer of Mrs. Boykin, was not the person to whom her dissent should have been signified. If the boat had a place of doing business at Columbus, or elsewhere, of which there was no proof, it might be another question.
3. Again, error is charged in this, to-wit: that the Court admitted the books of Hall & Moses, which contained receipts by the boat for sundry articles shipped by the river, on which there was no exemption of the kind contended for, Mr. Moses stating expressly that these receipts were not intended to be bills of lading, but were memoranda taken from the boat by the dray-men to show that the goods were delivered. We think the testimony should have been excluded, because it does not serve to elucidate the issue before the jury, to-wit: custom or no custom.
4. Lastly, and mainly, it is complained of as error, that the Court charged the jury that if the contract was, that the carriers were to take one hundred bales of cotton only, and were not to take more than one hundred bales, and the carriers took more than one hundred, they violated the contract, and, there-
*165 fore, derived no right, under the contract, to carry any part of the cotton, and, consequently, they could not set up the contract as a defense to the suit. Reference to the testimony of W. H. Harper will show that there was no evidence to warrant this charge, and that it is purely hypothetical, and as such, condemned by numerous decisions of this Court: 7 Georgia Reports, 495; 8 Ibid., 116. We have in the evidence the written order, signed by Colonel Harper, under which the cotton was received. Colonel Harper was the shipping agent of Mrs. Boy-kin. It is in these words:
“ Columbus, December 25th, 1853.
“ Captain Berry will please call at Mrs. Boykin’s landing, and take one hundred bales, with or without mark, and deliver to Harper & Holmes, Apalachicola, by whom the freight will be paid, etc., and oblige W. H. Harper.”
It will be seen at a glance that the written authority given to the boat is very different from that expressed in the charge, to-wit: that the captain was to take one hundred bales, only, and not more than one hundred bales. Let this case, on the next trial, which we are constrained to award, and which it is hoped will be the last, be heard upon the evidence as it is, and in the light of the law, as heretofore laid down by this Court, and it seems to us there can be no difficulty in arriving at a correct result.
Let the judgment be reversed on the ground that the Court below erred in charging the jury, “that if the contract was that the carriers were to take one hundred bales of cotton only, and wmre to take no more than one hundred bales, and the carriers took more, they violated the contract, and, therefore, derived no right, under the contract, to carry any part of the cotton, and, consequently, they could not set up the contract as a defense to the suit.”
Judgment reversed.